

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

Dwayne H. Nance

1325 Main Street apt. 315

Buffalo, New York 14209,

Case No. 22CV447

Vs.

COMPLAINT

Jury Trial Demanded

Denis R. McDonough, Acting Secretary,

U.S. DEPARTMENT OF VETERANS AFFAIRS

        Agency.

Frank Riggi,

Management Official SPS Chief, GS-11,

At the Veterans Affairs Western

New York Healthcare System in Buffalo,

New York 3495 Bailey Ave., 14215.

1

# Contents

Introduction ........................................................................................................................... 2

Retaliatory Harassment #I....................................................................................................... 2

Retaliation #2 ......................................................................................................................... 4

Retaliatory Participation #3 .................................................................................................... 6

## Introduction

"The plaintiff is protected against retaliation regardless of the validity or reasonableness of the original allegation of discrimination" (EEOC). For this reason, the plaintiff has filed a civil action under Title VII OF THE CIVIL RIGHTS ACT OF 1964. As codified, 42 U.S.C. & 2000e to 2000e-17 (amended in 1972, 1978, and by the Civil Rights Act 1991). And related New York State claims, under 28 U.S.C. 1367(a). Which the Court has jurisdiction over. Because WESTERN DISTRICT OF NEW YORK is the designated jurisdiction for federal civil cases. According, to the limits set by Congress and the Constitution. Also, the court has conferred jurisdiction over 28 U.S.C. 1331, 1343, 42 U.S.C. 1981, 1983, and 1985(3), as amended by the Civil Rights Act of 1991, and any related claims under New York Law. 2. With claims, under 28 U.S.C. 1367 (a). And State Human Rights Law, N.Y. Exec. Law 290 to 297.

## Retaliatory Harassment #I

I. On August 16, 2017, the medical supply department (SPS) was located at the VA hospital at 3495 Bailey Ave. Buffalo, NY 14215. Made the local Buffalo Newspaper over a dirty scope incident. That was incorrectly cleaned by an employee name Damon. Which prompted a federal investigation initiated by Congressman Brian Higgins.

II. Manager Frank Riggi on August 16, 2017, informs the 3 pm-11 pm shift that a dirty scope was reported to the Buffalo News. And that a federal investigation was taking place inside the Buffalo NY, VA SPS department. With that said, manager Frank Riggi told the 3 pm-11 pm shift that the SPS department could be shut down. And that his job was in jeopardy as well. Those in attendance were: the plaintiff, Bryant Harris, Bo, Jared Queen, and Aaron Felder who transferred to Houston hospital VA. The speech made the plaintiff very uncomfortable because the plaintiff had not been properly rotated by supervisor Bryant Harris. So, he pulled Frank Riggi to the side on August 16, 2017, in confidence and told him of the rotation issue (whistleblower claim). Hence, making the rotation issue a protected activity.

III. However, on August 18, 2017, the whistleblower activity was not properly relayed to supervisor Bryant Harris. By manager Frank Riggi regarding the plaintiff's civil rights. Which in turn violated the civil rights of the plaintiff as put forth by *Title VII Whistleblower Act of 1989* which was designed to protect the rights of federal employees. Likewise, the Prohibited Personnel Practices *statute 5 U.S.C. 2302* was violated as well. For the previous reasons, Frank Riggi provoked supervisor Bryant Harris to respond with retaliatory harassment, violating *Title VII anti-retaliation provision 42 U.S.C. §2000e–3(a)*.

IV. For the record, supervisor Bryant Harris tried to get the plaintiff terminated. After, manager Frank Riggi on August 18, 2017, told Bryant Harris about the rotation complaint concerning the plaintiff. Frank Riggi recklessly disregarded the plaintiff's whistleblower activity afforded by Title VII retaliation statute 42 U.S.C. 2000e-3(a). So, Bryant Harris retaliated by damaging the plaintiff's name and reputation. By, comparing the plaintiff to Damon the individual who caused the dirty scope incident. That was reported in the local Buffalo newspaper. This was in line with other derogatory statements made by Bryant Harris (deformation). Then Bryant Harris persistently undermined the plaintiff's work performance in decontamination (dirty side) for two weeks straight. In the period from August 18, 2017 – to August 31, 2017. This alleged problematic period is demonstrated in the plaintiff's SPS departmental files.

V. However, Bryant Harris's retaliatory intentions were made clear during the period August 18, 2017, to August 31, 2017. Because 98% of his documented alleged complaints directed toward the plaintiff on the SPS second shift occurred in the previous time frame. With that said, Bryant Harris's retaliatory harassment was the **proximate cause.** For Frank Riggi seeking termination of the plaintiff on August 28, 2017. Yet, after the plaintiff completed his extra training in decontamination and the G.I. lab with Shannon Cross on August 25, 2017. And after Mr. Cross spoke to Bryant Harris concerning the plaintiff. As a result, Shannon Cross gave the plaintiff a fully successful evaluation on September 1, 2017 (e.g., ROI, pp.87, 88). And Shannon Cross told Frank Riggi that Bryant Harris was lying about the plaintiff. Subsequently, ceasing Frank Riggi's attempt to terminate the plaintiff.

VI. The **pretextual conditions** lead up to retaliatory harassment. Why do supervisor Harris's alleged complaints focus on the decontamination room (dirty side)? Because Bryant Harris rarely went inside the room to provide instruction to employees. Therefore, the plaintiff would often time have to take off all his protective gear to ask a question. So, poor communications impacted the training required for the plaintiff. Supervisor Harris got reprimanded by manager Frank Riggi for always sitting down on the job. Because people inside the SPS department were complaining. This is why Bryant Harris got a bad evaluation in

3

November of 2017. Also, it must be noted that Bryant Harris lied to EEOC investigator Carol Storey (e.g., ROI, pp. 124,125). About his behavior comparing plaintiff to bad employee Damon August 18, 2017. Shannon Cross confirmed Harris lied (18 U.S.C.) in his affidavit with investigator Carol Storey (EEOC). Which to a huge degree was a severe discriminatory action toward the plaintiff. This person Damon caused the dirty scope incident on August 16, 2017. Moreover, Bryant Harris (Hispanic) stated in his affidavit with investigator Carol Storey in 2018 that if it was up to him; the plaintiff would have been terminated a long time ago (e.g., ROI, p. 125). Similarly, In November of 2017, Bryant Harris attempted to form a petition to get the plaintiff terminated. As stated to the plaintiff by Bo a coworker on the SPS 3 pm – 11 pm shift. Other people like Deonia Cobb and Teresa Straw were also present. So, violating *Title VII Retaliation Clause*.

VII. *Retaliatory Harassment, fermented* by Bryant Harris (Hispanic). Finally, the harassment by supervisor Bryant Harris had no basis in logic. First, Bryant Harris rarely put the plaintiff in surgical trays, even though the plaintiff knew the instruments. So, knowing how the surgical trays are set up increases your speed while breaking down dirty trays in decontamination. Secondly, Bryant Harris was not rotating the plaintiff properly into the decontamination room. This was confirmed by Marian Mclean in her affidavit to the EEOC (e.g., ROI, p. 110). Thirdly, there was only one person in decontamination during the time of Bryant Harris's harassment of the plaintiff (August 18, 2017 to August 31, 2017). Compared to their being two persons in the decontamination room on the first shift.

## Retaliation #2

I. Judge Monique J. Roberts, U.S. EEOC New York District Office, 33 Whitehall Street, 5th Floor, New York, New York 10004-2112. In her decision without a hearing report stated that the laryngoscope handle should not be immersed, or soaked (February 19, 2021). According to the manufactures instructions for use (IFU). If that is the case, then why did Frank Riggi change the policy in November of 2017? Requesting that the workers in the SPS department at Buffalo, NY Veterans Hospital; submerge the laryngoscope in cidex water.

II. Therefore, Frank Riggi committed negligence, including the careless failure to comply with rules, regulations, written procedures, or proper supervisory instructions. For this reason, the *No Fear Act Notice* protects the plaintiff according to the Reprisal Act of 2002 or Whistleblower act or Antidiscrimination.

III. On November 16, 2017, the plaintiff was allegedly accused by Frank Riggi of cleaning a laryngoscope that ended up in the emergency room (e.g., ROI, p. 110). Frank Riggi insisted that the laryngoscope was waterproof. So, on November 17, 2017, the plaintiff was in the decontamination room cleaning the laryngoscope. Then the plaintiff placed a

4

few laryngoscopes in cidex liquid-like Mr. Riggi wanted. The plaintiff (Black) had a witness Phil Valentine (environmental services) watching the whole action. The plaintiff retrieved the laryngoscopes from the liquid and found two of them containing water. Phil Valentine (Caucasian) went and got Frank Riggi from his office and we both showed Mr. Riggi the evidence. Hence, the whistleblower status and opposition clause was established.

IV. On November 23, 2017, Frank Riggi committed reprisal and went to human resources, and recommended termination for the plaintiff. Again, Frank Riggi violated the plaintiff's whistle-blower rights and opposition clause. However, this time Frank Riggi (Caucasian) intentionally violated multiple civil rights of the plaintiff. Such as anti-discrimination statutes: *5 U.S.C. subsection 2302 Prohibit personal practices*, *42 U.S.C. 2000e-16 Employment by Federal Government*. And retaliation *statute 5 U.S.C. 2302 gross mismanagement.* Frank Riggi is not supposed to retaliate against an employee engaged in a protected activity. Frank Riggi also withheld pertinent information (whistleblower) regarding the plaintiff's termination on November 23, 2017.

V. The **proximate cause** of Frank Riggi's reprisal actions was directed toward the plaintiff's termination on November 23, 2017. Starts with the plaintiff not being aware of Frank Riggi's laryngoscope policy change in November of 2017. Until November 16, 2017, when the dirty laryngoscope incident occurred. Because Frank Riggi did not have an in-service or meeting informing the Buffalo VA SPS department of the policy change for laryngoscopes. Furthermore, Frank Riggi never showed any proof tangible or intangible that the plaintiff caused the laryngoscope incident. Which are a violation of management duties and responsibilities. So, the plaintiff is pursuing statute *42 U.S.C. 1983* civil *action for deprivation of rights*. And, the *No Fear Act Notice*. Because Frank Rggi intentionally violated the plaintiff's civil rights to cover up his negligence. About the ill-advised laryngoscope policy change in November of 2017. Moreover, Frank Riggi provided a false reason to allege poor work performance for the plaintiff's termination on November 23, 2017. After the plaintiff received a fully successful evaluation on November 7, 2017. And failed to report the plaintiff's whistleblower status.

VI. Frank Riggi's reprisal behavior was **pretextual** for the simple reason he was compromised as a manager. Frank Riggi stated on August 16, 2017 that he fear for his job security. In addition, Frank Riggi received a bad evaluation in early November of 2017. And Frank Riggi committed negligence in November of 2017 as well (illegally changing the laryngoscope cleaning procedure). And intentionally violating *Title VII of the Civil Rights Act of 1964* prohibiting retaliatory action 703 against plaintiff under whistleblower activity, 42 U.S.C. 2000e-2 (1994) depr. As well as, Section 703(a), 42 U.S.C. 2000e-2(a). In addition to Mr. Riggi's compromised position, he misinformed investigator Carol Storey (EEOC), in his affidavit. Concerning, Bryant Harris's comparison of the plaintiff to

5

Damon (G.I. lab dirty scope incident August 16, 2017), August 18, 2017 (e.g., ROI, p. 94). The previous statement was confirmed by Shannon Cross in his affidavit to Carol Storey. Likewise, lying to Carol Storey about the plaintiff being retrained in all areas in the Buffalo VA SPS department (e.g., ROI, p. 93). When the plaintiff had extra training only in the decontamination room and the G.I. lab. Proving it was the plaintiff that requested extra training and not Bryant Harris. Besides, the G.I. lab is closed on the plaintiff's 3 pm to 11 pm shift.

## Retaliatory Participation #3

I. It is clear without a doubt that Frank Riggi wanted to control the flow of information, inside the Buffalo VA SPS department. Thus, for Riggi's dishonest reasons. For instance, when assistant manager Marian Mclean told the plaintiff on November 7, 2017, during the evaluation meeting to write a rotation complaint (e.g., ROI, p. 117). The plaintiff was surprised to know she was not told about the rotation issue. On top of that, Frank Riggi withheld crucial protected whistleblower information from Human Resources. In terms of the plaintiff on August 28, 2017, and November 23, 2017, on both occasions, Mr. Riggi requested termination for the plaintiff.

II. However, Frank Riggi's retaliatory plans to terminate the plaintiff did not end there. Even after the plaintiff proved to Riggi on November 17, 2017, that his new cleaning procedure for the laryngoscope was faulty. Still, on November 23, 2017, Riggi requested the plaintiff be wrongly terminated. The plaintiff asked Frank Riggi for a meeting with human resources during termination, on December 12, 2022. With that said, Frank went out of his way to avoid such a conference. It must be duly noted that Frank Rggi was never disciplined for his negligence about the laryngoscope policy change. The Buffalo, NY VA Hospital covered it up using unlawful employment practices, 42 U.S.C. 2000e-2.

III. The false premise that the laryngoscope was waterproof continued, from Frank Riggi (Caucasian), to human resources (Lawrence Dibble) and to the ADR meeting on February 21, 2018. And to the phone conference with Judge Monique j. Roberts, VA lawyer Kimberly M. Thrun, and the plaintiff (june 16, 2020). In this way, violating the opposition clause and the statute's "participation clause" of Title VII and the anti-retaliation provision (statute 42 U.S.C. 2000e-3(a)).  Which was an Intentional violation of good faith. This breach of the implied contract standard found its way to the ADR meeting. Which included, Joyelle Hackett, Regina Burke (Caucasian), and Frank Riggi. Both Riggi and Burke lied at the ADR meeting intentionally. Then Frank Riggi had a full-fledged meltdown and Regina Burke (acting ADNPS) suddenly stood up and angrily left the meeting. The plaintiff's lawyer Stephanie Adams was also present at the meeting.

6

**IV.** At this point, the Buffalo, NY VA SPS department violated the *Disparate Treatment Act*. The plaintiff was in a protective class being African American in line with Title VII, and the plaintiff experienced extreme reprisal. As demonstrated at the ADR meeting on February 21, 2018. Ultimately, causing the termination of the plaintiff. However, it is more than reasonable to expect the same treatment for Frank Riggi. Since Riggi was in a similar position for illegally changing the policy for the laryngoscope cleaning procedure. But, the Buffalo, NY VA hospital failed to discipline Frank Riggi for his serious negligence. Hence, reducing the ADR meeting to a fishing expedition.

**V.** All things considered, **wrongful termination** based on retaliation for an employee's legally protected activities violates, *Title VII of the Civil Rights Act of 1964 Amended Retaliation*. For example, an employer is not allowed to retaliate when an employee communicates to a supervisor or manager about harassment. Likewise, when an employee is filing an EEO charge or compliant. Resulting in retaliatory participation and termination. Which is protected under the participation clause. Other acts of *disparate treatment* occurred at the Buffalo, NY VA medical supply department in 2017 & 2018. For instance, when inexperienced coworker Rogelio Diaz (Hispanic) left 5 laparoscope pans in decontamination (dirty side) for the plaintiff on the second shift. The filth on the instruments had gotten so hard that they were very difficult to clean. In other words, Diaz should had soak them to prevent the hardening (e.g., ROI, pp. 58, 80). The plaintiff explained this to Frank Riggi that's why the plaintiff was not written up for the event. However, the Buffalo NY VA SPS department presented this as misinformation to investigator Carol Storey. Furthermore, concerning the alleged laryngoscope incident Frank Riggi singled out only the plaintiff, and no one else was disciplined (blatant favoritism). Even though, it takes two people to process said instrument. One on the dirty side and one on the clean side. Again, the water in the laryngoscope was caused by an illegal change in policy by Frank Riggi. This illegal policy change could have been easily prevented. If both Frank Riggi and Regina Burke would have checked the manufactures information for use manual. A process that is routinely required from all managers in every hospital. Therefore, this reprisal against the plaintiff was intentional on their part offending the "color of law". (Belligerent reprisals).

Unfortunately, there were a series of discrepancies or untrue facts involving the Buffalo NY, VA case against the plaintiff. For example, even Lawrence Dibble of human resources had no answers for investigator Carol Storey (EEOC) regarding the plaintiff's alleged poor work performance (e.g., ROI, p. 103). Since the plaintiff had three fully successful evaluations on 5/15/17, 9/1/17, and 11/7/17. Therefore, it is by the preponderance of evidence provided. That the plaintiff claims willful violations by the Buffalo, NY VA hospital and SPS managers. Under *Title VII Retaliation/Whistleblower*

7

*rights*. In addition to, *Title VII's "opposition clause" and the statute's "participation clause"*. The plaintiff claims wrongful act tort and negligent tort. Including other statutory rights and public policy violations. Such as wrongful discharge and defamation claims. This is why the plaintiff is also pursuing loss of earnings and future loss of earnings, and failure to promote plaintiff. As well as, compensatory damages, punitive damages, emotional distress, loss of benefits, pain, and suffering. And all the damages that are afforded to the plaintiff by law.

**WHEREFORE,** I respectfully request this Court to grant me such relief as may be appropriate, including injunctive orders, damages, costs, and attorney's fees.

Date: 6-13-2022

_____
Plaintiff's Signature

Signed before me this
13 of June 2022.

C. M Vest

Dwayne H. Nance
Medical Supply Technician
Department of Veterans Affairs, Start date February 6, 2017
Phone: (716) 830-9249
Email: dwayne.nance@hotmail.com

Erin M Vest
Notary Public, State of New York
Reg. No. 01VE6357877
Qualified in Erie County
Commission Expires May 1, 2025

8

OMB NO.: 2900-0710
EXPIRATION DATE: DEC 31, 2019
RESPONDENT BURDEN: 30 Min.

COMPLAINT CASE NUMBER:

# Department of Veterans Affairs — COMPLAINT OF EMPLOYMENT DISCRIMINATION

*Read the instructions on the reverse side of this form carefully before completing the front of this form.*

**1. NAME** (Last, first, middle initial) (Please print): NANCE, Dwayne H.

**2. EMAIL ADDRESS:** [redacted]

**3. MAILING ADDRESS:** [redacted]

**4a. WORK TELEPHONE NUMBER** (Include Area Code): (716) 862-8669

**4b. PRIMARY TELEPHONE NUMBER** (Include Area Code): [redacted]

**5. ARE YOU:**
- [ ] A VA EMPLOYEE
- [ ] AN APPLICANT FOR EMPLOYMENT
- [x] A FORMER VA EMPLOYEE

**6a. JOB TITLE, SERIES AND GRADE:** Medical Supply Technician GS 5

**6b. SERVICE/SECTION/PRODUCT LINE:** Medical VA Service Care Line

**7. NAME AND ADDRESS OF VA FACILITY WHERE DISCRIMINATION OCCURRED:** WNY, Buffalo VA, NY, 3495 Bailey Avenue, Buffalo, NY 14215

NOTE: For each employment related matter that you believe was discriminatory you must list the bases (list one or more of the following): Race (Specify), Color (Specify), Religion (Specify), Sex (Male or Female), National Origin (Specify), Age (Provide date of birth), Disability (Specify), Genetic Information (including family medical history), and/or Reprisal for participating in the EEO process or opposing unlawful discrimination.

**8. BASIS:**

**9. CLAIM(S):** (What employment related claim(s) - personnel action(s), incident(s), or event(s) caused you to file this complaint? Briefly state the specific claim, personnel action and/or event that caused you to file this complaint. Use an additional sheet of paper if necessary. You should not include information that violates the Privacy Act of 1974 and the Health Insurance Portability and Accountability Act (HIPAA). Some examples are patient medical records, personnel records of other VA-employees, etc.)

RECEIVED MAY 07 2018 BY: ORM/CRE

**10. DATE OF OCCURRENCE** (Include the most recent date(s)):

**11. REMEDIES SOUGHT** (Use an additional sheet of paper if necessary.)
EEO ADR Meeting on 2/21/18 with Karen Lott and Joyelle Hackett at Buffalo VA, NY. Still awaiting outcome.

**12a. DO YOU HAVE A REPRESENTATIVE?** [ ] YES [x] NO
**12b. IF "YES," IS HE OR SHE AN ATTORNEY?** [ ] YES [ ] NO
**12c. PROVIDE THE NAME AND ADDRESS OF YOUR REPRESENTATIVE:** N/A
**12d. TELEPHONE NUMBER:** —
**12e. EMAIL ADDRESS:** —

**13a. HAVE YOU CONTACTED AN EEO COUNSELOR?** [x] YES [ ] NO
**13b. NAME OF EEO COUNSELOR:** Joyelle Hackett
**13c. DATE OF INITIAL CONTACT WITH ORM:** 1/18/18

**14.** If you contacted an EEO Counselor more than 45 calendar days after the Date(s) of Occurrence, listed in item 10, or if this complaint is filed more than 15 calendar days after receipt of a Notice of Right to File a Discrimination Complaint, you must explain why you were untimely in seeking EEO counseling or untimely in filing a complaint. (Use an additional sheet of paper, if necessary.)

**15a. HAVE YOU FILED A UNION GRIEVANCE ON ANY CLAIM(S) LISTED ABOVE?** [ ] YES [x] NO
**15b. IF "YES," LIST THE CLAIM(S) AND DATE GRIEVANCE FILED:** N/A
**16a. HAVE YOU FILED AN APPEAL WITH THE MERIT SYSTEM PROTECTION BOARD (MSPB) ON ANY OF THE CLAIMS LISTED ABOVE?** [ ] YES [x] NO
**16b. IF "YES," LIST THE ISSUE(S) AND DATE MSPB APPEAL FILED:** N/A

**17a. HAVE YOU FILED THIS COMPLAINT WITH ANYONE ELSE?** [x] YES [ ] NO
**17b. IF "YES," PROVIDE THE NAME AND ADDRESS:** Joyelle Hackett EEO Officer, WNY, Buffalo VA, NY 3495 Bailey Avenue, Buffalo, NY 14215

**18. SIGNATURE OF COMPLAINANT** (Do not print): Dwayne Nance 5/7/18
**19. DATE:** 5/4/18

VA FORM MAR 2017 4939 — SUPERSEDES VA FORM 4939, MAR 2013, WHICH SHOULD NOT BE USED.

000005

CASE NUMBER: 200H-0528-2018101937

① 

**E-mail:** [redacted]

The circumstances surrounding my wrongful termination basis on discrimination is as follows:

After a month long of training I was place on the 3:00pm 11:30pm shift of **April 2017**. Initially, things went well I was rotating on a weekly basis in each area of the department. But, after about a month things changed, and I found myself constantly being placed in the sterilization area. Also, I was frequently designated to go on the floors and pick up the dirty instruments from the various clinics we happen to service. This comprises about five separate clinics throughout the hospital. Then once the dirty instruments are cleaned and processed through decontamination. I was required to package, label and stamp them to be sterilized. This pattern went on from **May of 2017** to about **September of 2017**. Because of our senior Instrument technician Mr. Aron receiving several nonconformity slips for surgical tray assembly. Mr. Aron wanted to be in decontamination every day, until he transferred to a hospital in Texas, in **September of 2017**. The clinical pick up logs and sterilization logs we kept can easily verify my previous statements. Furthermore, my lack of participation during said time can be verified by checking the Medivator's logs for scopes, in decontamination area. Nevertheless, this is a breach of the good faith agreement implied by the probationary agreement. This lack of rotation severely hampered my development.

Similarly, during the time period of **May Of 2017** to **September 2017** in addition to sterilizing all the OR trays, OR supplies, and clinical instruments, after packaging them of course. I ran around the department unloading the instrument tray washer, clearing the window of clean scopes and medical equipment, as well as going to the other side of my sterilization area to empty the cart washer. Now, the cart washer is a machine that cleans the case carts that hold the OR trays and supplies that go up to surgery. Now, I was performing all these tasks while my supervisor Mr. Bryant Harris stay seated the whole 3-11 shift. Still, the duty of attending all these areas is required by every member of the shift. However, I found myself attending to these areas 90% of the time.

Furthermore, this supervisor Mr. Bryant Harris has a history of seating on is butt the entire shift, and only getting up when it's absolutely necessary. In fact, everyone in the department frequently complains about this truth. Why my Chief of SPS Mr. Frank Riggi refuses to recognize or address the problem is beyond my understanding.

Unfortunately, the month of **July of 2017** turnout to be a bad time for the SPS department. It was at this time one of my follow co-works by the name of Mr. Damon (black) on the morning shift was observed by an administrator of the hospital. He was observed and asked a series of questions pertaining to the processing of an endoscope while working in the GI lab. He failed miserably. This event created a huge crisis within the department. Of which resulted in a lot of negative publicity on the TV news and local papers. You can reference some of this material at Buffalo VA medical center health alert. Author: WGRZ, published **August 16, 2017.**

As you can imagine this caused a lot of concern within the SPS department. Everyone in the SPS department was worried that they too might me approached in like manner by an administrator, and asked a series of questions. Indeed, me being a new hire I felt even more pressure. So, I initiated a meeting with my Chief of SPS Mr. Frank Riggi **August of 2017**. I told him that my skills pertaining to the GI lab and decontamination areas was a little rusty, due to not being rotated properly in these areas. Consequently, In the future I would like to spend more time in these areas to sharping my skill set.

At this moment you would expect a good manager to react positively to an employer pushing himself to be better, but this wasn't the case. Instead, he scheduled me for retrain with special assistant Mr. Shannon Cross. However, I found out a little later that Mr. Bryant Harris had informed Mr. Frank Riggi I was slow in the before mention areas **(8/18/2017)** and that I remind him of Mr. Damon the guy that caused Mr. Riggi so many problems.. I believed he did this to misdirect the attention from himself to me (motive and discriminatory action). The reason I say this is because Mr. Shannon Cross approached Mr. Bryant Harris about what he said to Mr. Frank Riggi, and it all turnout to be bogus. This can easily be verify by Mr. Shannon Cross. However, from this point on Mr. Riggi started to treat me differently.

Consequently, I took the retrain period as an opportunity to prove to Mr. Frank Riggi that I knew what I was doing. So, once again just like my initial training, upon the second day of instruction for The GI lab and Decontamination room. I told Mr. Shannon to go and take care of other pressing issues, in other words I got this. After my training, he gave my manager Mr. Riggi a good report.

After some time had passed, I was doing very well performing my duties. However, Ms. Marian Mclean my Assistant Chief decided to have a contest on the 3:00pm – 11:30pm shift. The contest consisted of four different games, with each one resultant in a prize. They were based on our knowledge of the different surgical instruments. I won all but one game and one of those prizes was a pass to get off early. I used that pass one day in September or October of 2017. I was working in the decontamination room and getting ready to leave and had one scope left to clean. So, I told my Mr. Harris about my situation. I could tell he was upset because he had to get up for one, and number two he had to clean the scope.

Once again Mr. Bryant Harris complained to Mr. Frank Riggi **(8/28/17)** that I was too slow. However, this time he told my manager Mr. Frank Riggi that I was just like Mr. Damon. The same guy that caused all of the negative publicity we received earlier in August of 2017. At this time, Mr. Bryant Harris knew Mr. Frank Riggi had extreme hatred for this guy for obvious reasons. This was a discrimilitory act with malicious intent. Everyone in the department knows about Mr. Bryant Harris performing this act toward me.

Nonetheless, despite Mr. Bryant Harris attempts to undermine me, I always kept my focus on getting better. For that reason, I obtain a successful evaluation around the first week of **November 2017**. However, my evaluation papers may say **October of 2017**, but the actual evaluation meeting took place in **November of 2017**. How do I know this? Because, during my evaluation meeting with Mrs. Marian Mclean the subject of retrain came up. I proceeded to explain to her my lack of rotation in the past with Mr. Bryant Harris. Mrs. Marian Mclean responded by saying, she was not made aware of this via Mr. Frank Riggi. So, she suggested that I write a letter regarding the matter, and that she would put it in my file. Henceforth, I handed Mrs. Marian Mclean the letter a week after the evaluation took place. The letter is dated for **November 16, 2017**.



However, Mr. Harris's evaluation did not go so well. Thus, a few days after Mr. Harris's evaluation, he went out on disability. So, the 3:00pm – 11:30pm shift was without a supervisor for about three weeks. During that time without a supervisor the atmosphere in the department was noticeably different. In fact, at one of our daily meetings (a meeting we have before the start of 3:00pm-11:30pm shift) Mr. Riggi went up to Mr. Bo, a senior follow co-worker and said what a wonderful job you've being doing. He also promised to reward him in the future. But it didn't end there Mr. Bo look at Mr. Riggi and told him what a great job I had been doing. However, Mr. Riggi refuse to turn around and acknowledge me nor did he thank me. This is very easily verifiable.

Later, my last week leading up to my termination unfolded in a similar peculiar fashion. For example, Thursday on **December 7, 2017** I went to work to do overtime on the morning shift. I was sent to the decontamination room, there I joined Mr. Junior to breakdown the dirty cases coming from surgery. At this moment I would like to point out to you that there are usually two people in the decontamination room on the morning shift. Remember when Mr. Bryant Harris told my Manager Frank Riggi that I was too slow. Well, there is only one person in the decontamination room on the second shift. Furthermore, on that particular day the OR case load was heavy. But then again, me and Mr. Junior clear the area so quickly that receive a great complement from Ms. Angie Green. She is considered to be the best worker in the SPS department and hard to please.

Likewise, I went to work for overtime on Monday **December 11, 2017**, morning shift. I was sent to the GI lab to help Ms. Angie Green process scopes. Yet again, Ms. Loretta our morning shift supervisor called up to The GI lab at 3:00pm to get a status report. Ms. Green responded by saying everything is find, and by the way Dwayne Nance is doing a great job.

Once more, on Tuesday **December 12, 2017** I headed to work to do overtime in the morning. Again on Wednesday at 1:00pm to do overtime. Then at about 3:30pm Mr. Frank Riggi calls me into the office to inform me he was terminating me. I asked him why and he said because of my performance. I replied what you call all the overtime I did. I got no response from Mr. Riggi, then I said go to the back and ask all of by co-works about how well I been performing.



He refused, so I ask for a representative to help me understand what was going on, again he refused. Mr. Riggi the proceeded to rush me out the office.

    Finally, I guess you may be wandering why Mr. Riggi was so easily manipulated by Mr. Bryant Harris. Well, there are several reasons: One, Mr. Frank Riggi rarely came to the back on 3:00pm – 11:30pm to directly observe daily activities. Therefore, Mr. Riggi's opinions and conclusions were formed almost exclusively from what Mr. Harris told him. Two, After the Damon incident with the endoscope Mr. Riggi was heavily immerse into damage control, paperwork, phone calls and self-preservation. Three, after the Damon incident the SPS department was investigated by top officials from out of town. Several violations were found, in other words more paper work, and more damage control. Reference material at www.faraci.com/tag/medical-scopes/. Brain Higgins calls for investigation. Four, Mr. Riggi recently received a bad evaluation. Again, more paper work and more damage control, he tried going to Human Resources to amend his evaluation. They deny him. With all due respect, the main purpose of this letter is to get my job back. Therefore, I'm making a good faith effort to first handle this internally. In fact, I successfully proved my case at the EEO ADR meeting on **2/21/2018**.

Thank You

Dwayne Nance



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Office of Federal Operations
P.O. Box 77960
Washington, DC 20013

Dwayne Nance, a/k/a
Jeremy C.,[1]
Complainant,

v.

Denis R. McDonough,
Secretary,
Department of Veterans Affairs,
Agency.

Request No. 2022001042

Appeal No. 2021003201

Hearing No. 520-2019-00244X

Agency No. 200H-0528-2018101937

## DECISION ON REQUEST FOR RECONSIDERATION

Complainant timely requested that the Equal Employment Opportunity Commission (EEOC or Commission) reconsider its decision in EEOC Appeal No. 2021003201 (November 16, 2021). EEOC regulations provide that the Commission may, in its discretion, grant a request to reconsider any previous Commission decision issued pursuant to 29 C.F.R. § 1614.405(a), where the requesting party demonstrates that: (1) the appellate decision involved a clearly erroneous interpretation of material fact or law; or (2) the appellate decision will have a substantial impact on the policies, practices, or operations of the agency. See 29 C.F.R. § 1614.405(c).

During the relevant time, Complainant worked as a Medical Supply Technician, GS-0622-05, at the Agency's Sterile Processing Services (SPS) Department at the VA Western New York Healthcare System in Buffalo, New York.

Complainant filed a formal complaint, claiming discrimination based on race and color. Complainant alleged his employment was terminated during his year-long probationary period.[2]

---

[1] This case has been randomly assigned a pseudonym which will replace Complainant's name when the decision is published to non-parties and the Commission's website.

After an investigation, Complainant requested a hearing. The assigned EEOC Administrative Judge (AJ) issued a decision by summary judgment concluding the evidence of record did not establish any discrimination. Thereafter, the Agency issued a final order implementing the AJ's finding of no discrimination. Complainant appealed.

In EEOC Appeal No. 2021003201, the Commission affirmed the Agency's final order implementing the AJ's finding of no discrimination.

In the instant request for reconsideration, we have carefully reviewed Complainant's arguments and determine that the matters either were raised or could have been raised below. We note that during the original appeal from the Agency's final order, Complainant presented a number of arguments, many of which have been replicated in the instant request. We emphasize that a request for reconsideration is not a second appeal to the Commission. Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO MD-110), Chap. 9 § VI.A (Aug. 5, 2015); see, e.g., Lopez v. Dep't of Agric., EEOC Request No. 0520070736 (Aug. 20, 2007). Rather, a reconsideration request is an opportunity to demonstrate that the appellate decision involved a clearly erroneous interpretation of material fact or law, or will have a substantial impact on the policies, practices, or operations of the Agency. Complainant has not done so here.

After reviewing the previous decision and the entire record, the Commission finds that the request fails to meet the criteria of 29 C.F.R. § 1614.405(c), and it is the decision of the Commission to deny the request. The decision in EEOC Appeal No. 2021003201 remains the Commission's decision. **There is no further right of administrative appeal on the decision of the Commission on this request.**

## COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (P0610)

This decision of the Commission is final, and there is no further right of administrative appeal from the Commission's decision. You have the right to file a civil action in an appropriate United States District Court **within ninety (90) calendar days** from the date that you receive this decision. If you file a civil action, you must name as the defendant in the complaint the person who is the official Agency head or department head, identifying that person by his or her full name and official title. Failure to do so may result in the dismissal of your case in court. "Agency" or "department" means the national organization, and not the local office, facility or department in which you work.

---

[2] In his request for reconsideration, Complainant alleges retaliation and a hostile work environment/harassment. However, as these allegations were not included in his underlying complaint, we will not consider them in the instant request.

3

2022001042

## RIGHT TO REQUEST COUNSEL (Z0815)

If you want to file a civil action but cannot pay the fees, costs, or security to do so, you may request permission from the court to proceed with the civil action without paying these fees or costs. Similarly, if you cannot afford an attorney to represent you in the civil action, you may request the court to appoint an attorney for you. **You must submit the requests for waiver of court costs or appointment of an attorney directly to the court, not the Commission.** The court has the sole discretion to grant or deny these types of requests. Such requests do not alter the time limits for filing a civil action (please read the paragraph titled Complainant's Right to File a Civil Action for the specific time limits).

FOR THE COMMISSION:

*[signature]*

Carlton M. Hadden, Director
Office of Federal Operations

March 14, 2022
Date

## CERTIFICATE OF MAILING

**For timeliness purposes, the Commission will presume that this decision was received within five (5) calendar days after it was made available to the parties.** I certify that on the date below this decision was provided to the following recipients via the means identified for each recipient:

Dwayne Nance
1325 Main Apt. #315
Buffalo, NY 14209
Via U.S. Mail

Harvey Johnson, Deputy Assistant Secretary, Resolution Management
Office of Resolution Management (08D)
Department of Veterans Affairs
Via FedSEP

March 14, 2022
Date

Compliance and Control Division

# CIVIL COVER SHEET

JS 44 (Rev. 04/21)

22 CV 447 ✓

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Dwayne H. Nance

### DEFENDANTS
Denis R. McDonough, Acting Secretary of Veterans Affairs
Frank Riggi, Management Official SPS Chief, Buffalo New

**(b)** County of Residence of First Listed Plaintiff: Erie
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
"Pro Se"

Attorneys *(If Known)*
Kimberly M. Thrun, Esq., Agency Representative/ Staff Attorney, Department of Veterans Affairs, OGC-North Atlantic Dist., 3495 Bailey Ave., Buffalo, NY 14215

(Stamp: UNITED STATES DISTRICT COURT FILED JUN 13 2022 MARY C. LOEWENGUTH, CLERK WESTERN DISTRICT OF NY)

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*
- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [x] 3 Federal Question (U.S. Government Not a Party)
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| 110 Insurance | PERSONAL INJURY / PERSONAL INJURY | 625 Drug Related Seizure of Property 21 USC 881 | 422 Appeal 28 USC 158 | 375 False Claims Act |
| 120 Marine | 310 Airplane / 365 Personal Injury - Product Liability | 690 Other | 423 Withdrawal 28 USC 157 | 376 Qui Tam (31 USC 3729(a)) |
| 130 Miller Act | 315 Airplane Product Liability / 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | INTELLECTUAL PROPERTY RIGHTS | 400 State Reapportionment |
| 140 Negotiable Instrument | 320 Assault, Libel & Slander | | 820 Copyrights | 410 Antitrust |
| 150 Recovery of Overpayment & Enforcement of Judgment | 330 Federal Employers' Liability / 368 Asbestos Personal Injury Product Liability | | 830 Patent | 430 Banks and Banking |
| 151 Medicare Act | 340 Marine | | 835 Patent - Abbreviated New Drug Application | 450 Commerce |
| 152 Recovery of Defaulted Student Loans (Excludes Veterans) | 345 Marine Product Liability | | 840 Trademark | 460 Deportation |
| 153 Recovery of Overpayment of Veteran's Benefits | 350 Motor Vehicle / PERSONAL PROPERTY / 370 Other Fraud | LABOR | 880 Defend Trade Secrets Act of 2016 | 470 Racketeer Influenced and Corrupt Organizations |
| 160 Stockholders' Suits | 355 Motor Vehicle Product Liability / 371 Truth in Lending | 710 Fair Labor Standards Act | | 480 Consumer Credit (15 USC 1681 or 1692) |
| 190 Other Contract | 360 Other Personal Injury / 380 Other Personal Property Damage | 720 Labor/Management Relations | SOCIAL SECURITY | 485 Telephone Consumer Protection Act |
| 195 Contract Product Liability | 362 Personal Injury - Medical Malpractice / 385 Property Damage Product Liability | 740 Railway Labor Act | 861 HIA (1395ff) | 490 Cable/Sat TV |
| 196 Franchise | | 751 Family and Medical Leave Act | 862 Black Lung (923) | 850 Securities/Commodities/ Exchange |
| | | 790 Other Labor Litigation | 863 DIWC/DIWW (405(g)) | |
| REAL PROPERTY | CIVIL RIGHTS / PRISONER PETITIONS | 791 Employee Retirement Income Security Act | 864 SSID Title XVI | [x] 890 Other Statutory Actions |
| 210 Land Condemnation | 440 Other Civil Rights / Habeas Corpus: | | 865 RSI (405(g)) | 891 Agricultural Acts |
| 220 Foreclosure | 441 Voting / 463 Alien Detainee | | FEDERAL TAX SUITS | 893 Environmental Matters |
| 230 Rent Lease & Ejectment | [x] 442 Employment / 510 Motions to Vacate Sentence | | 870 Taxes (U.S. Plaintiff or Defendant) | 895 Freedom of Information Act |
| 240 Torts to Land | 443 Housing/ Accommodations / 530 General | | 871 IRS—Third Party 26 USC 7609 | 896 Arbitration |
| 245 Tort Product Liability | 445 Amer. w/Disabilities - Employment / 535 Death Penalty | IMMIGRATION | | 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| 290 All Other Real Property | 446 Amer. w/Disabilities - Other / 540 Mandamus & Other | 462 Naturalization Application | | 950 Constitutionality of State Statutes |
| | 448 Education / 550 Civil Rights | 465 Other Immigration Actions | | |
| | 555 Prison Condition | | | |
| | 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*
- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District (specify)
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
"Civil Rights" , "Employment".
Brief description of cause:
"42 U.S.C. 2000e-5" and Title VII

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
- DEMAND $ _____
- CHECK YES only if demanded in complaint:
- JURY DEMAND: [x] Yes  [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions)*
JUDGE _____   DOCKET NUMBER _____

DATE: 6-12-2022
SIGNATURE OF ATTORNEY OF RECORD: Dwayne Nance "Pro Se"

**FOR OFFICE USE ONLY**
RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____