UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DWAYNE H. NANCE,

        Plaintiff,

     v.                                  22-CV-447-LJV
                                            DECISION & ORDER
DENIS R. MCDONOUGH and FRANK
RIGGI,

        Defendants.
_____

       On June 13, 2022, the pro se plaintiff, Dwayne H. Nance, commenced this action under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Whistleblower Protection Act ("WPA"), and the New York State Human Rights Law ("NYSHRL"). Docket Item 1. He asserted claims of racial discrimination and retaliation arising from his employment with the United States Department of Veterans Affairs ("VA"). *Id.* And he named as defendants Denis R. McDonough, the then Secretary of the VA, and Frank Riggi, the Chief of Sterile Processing Services ("SPS") at the VA hospital in Buffalo, New York. *Id.*

       The defendants moved to dismiss the complaint, Docket Item 7, and the parties briefed that motion, Docket Items 12 and 13. On January 2, 2024, this Court granted the defendants' motion in part and denied it in part. Docket Item 15; *see Nance v. McDonough*, 2024 WL 22708, at *6 (W.D.N.Y. Jan. 2, 2024). More specifically, this Court held that Nance's Title VII claims for racial discrimination against McDonough could proceed but dismissed his Title VII claims against Riggi and his NYSHRL claims against both defendants. *Id.* at *3, *5-7. And it held that Nance's remaining claims— namely his Title VII claims for retaliation against McDonough and his WPA claims

against both defendants—would be dismissed unless he filed an amended complaint correcting the deficiencies the Court identified. *Id.* at *4-7.

On March 15, 2024, Nance filed his amended complaint. Docket Item 20. McDonough moved to dismiss the amended complaint,[1] Docket Item 21; Nance responded, Docket Item 30; and McDonough replied, Docket Item 31. Nance then moved to dismiss McDonough's motion to dismiss, Docket Item 32, which this Court construed as a sur-reply, *see* Docket Item 33.

For the reasons that follow, this Court grants McDonough's motion to dismiss all claims, including Nance's Title VII claims for racial discrimination.

## BACKGROUND[2]

On February 6, 2017, Nance started work as a Medical Supply Technician in the SPS department of the VA Western New York Healthcare System. Docket Item 1 at 2,

---

[1] It is not entirely clear to the Court why only McDonough—and not Riggi—moved to dismiss the amended complaint. It may be because Nance's amended complaint does not explicitly reassert his WPA claims, *see infra* Section II, which are the only claims against Riggi that this Court gave Nance leave to amend, *see Nance*, 2024 WL 22708, at *6.

Nevertheless, even if the amended complaint is construed as reasserting WPA claims against Riggi, this Court dismisses those claims for the same reasons it dismisses the claims against McDonough. *See infra* Section II; *see also Piuggi v. Good for You Prods. LLC*, 739 F. Supp. 3d 143, 156 (S.D.N.Y. 2024) ("[A] district court has the power to dismiss a complaint sua sponte for failure to state a claim on which relief can be granted as long as the plaintiff [has had] an opportunity to be heard." (internal quotation marks omitted) (collecting cases)).

[2] On a motion to dismiss, the court "accept[s] all factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016). The following facts are taken from the amended complaint, Docket Item 20. Because some of the allegations in the original complaint are not included in the amended complaint, the

8-9, 15; see Docket Item 20 at 1-2.³  After completing some training, Nance was assigned to the 3:00 p.m. shift, which was supervised by Bryant Harris.  Docket Item 1 at 4, 10; see also Docket Item 20 at 2.

"Initially, things went well," and Nance rotated through different assignments.  Docket Item 1 at 10.  But "after about a month," Nance "found [him]self constantly being" assigned by Harris to work "in the sterilization area."  Id.; Docket Item 20 at 2 (Nance's asserting that he was in "protected opposition to . . . Harris's rotation methods" and noting that Harris "always wanted to put [Nance] in the sterilization a[re]a").  The "lack of rotation" to assignments other than the sterilization area "severely hampered [Nance's] development."  Docket Item 1 at 10; see Docket Item 20 at 2-3.  Nance also believed that "his lack of rotation would affect . . . public health and [the] safety of [VA] patient[s]."  Docket Item 20 at 2-3.

In August 2017, an SPS department employee named Damon "failed a surprise inspection that led to an internal . . . investigation."  Id. at 2.  The incident—which involved Damon's use of a "dirty scope"—was given some publicity.  Id. at 2-3.  In response to these events, Nance "informed [his] manager," defendant Riggi, "of [the] serious problem regarding [Nance's] lack of rotation in the [SPS] department."  Id. at 2.  This was, Nance says, "a good-faith effort" on his part to "report[] a serious infraction of rules, regulations, and the law pertaining to public health and [the] safety of the patient[s]."  Id. at 3.

---

Court sometimes refers to the original complaint to provide additional context for Nance's claims.

³ Page numbers in docket citations refer to ECF pagination.

3

But instead of addressing the issue that Nance raised, Riggi "gross[ly] mishandl[ed]" Nance's complaint by informing Harris, who then "[c]reated a hostile work environment" for Nance.  *See id.*  For instance, Harris "compared [Nance] to Damon," the disgraced "former employee responsible for the dirty scope incident."  *Id.*  Nance refers to this comparison as a "malicious slur" that "undermined" Nance and led Riggi to view his "character and work performance" unfavorably.  *Id.*  In fact, as a result of the standoff between Harris and Nance, Riggi went to the human resources department in an attempt to get Nance fired, lying about the "original rotational issue."  *Id.*  Another VA employee then "determined that . . . Harris was lying" and decided that Nance should be given "extra training," not fired.  *Id.*

Although Nance's extra training was "fully successful," the damage had been done:  Riggi had "poisoned the well," and that led the human resources department to share Riggi's unfavorable perception of Nance.  *Id.* at 3.  Nance was given "three fully successful evaluations" in 2017; nonetheless, Riggi and Harris continued to "harass[]" him based on the complaints Nance had raised about employee rotation and patient safety.  *Id.* at 3-4.

Things came to a head on November 16, 2017.  *Id.* at 4.  In the middle of Nance's shift, "Riggi approached [him] about a laryngoscope that [had gone] to the [emergency room] with water in it."  *Id.*  "This did not make any sense to [Nance] because" he had followed "the normal procedure," which "was to wipe the laryngoscope down with a disinfectant," and he did not understand how water could have gotten "inside the laryngoscope when all [h]e did was wipe it down with a clean rag."  *Id.*  Nance, who felt singled out by Riggi's accusation, "denied having anything to do with

4

water inside the laryngoscope." *Id.*  In fact, Nance later learned that the water had gotten into the laryngoscope due to Riggi's "change[ to] cleaning procedure." *Id.*

Despite the fact that Nance was not at fault, on November 23, 2017, Riggi "went behind [his] back" to the human resources department to request Nance's firing. *Id.* This time, Riggi was successful, and Nance was fired the same day. *Id.* at 5.

On or around May 4, 2018, Nance filed a complaint of employment discrimination with the VA, alleging that he was discriminated against "based on race and color." Docket Item 1 at 9, 15.  Eventually, an administrative judge from the Equal Employment Opportunity Commission ("EEOC") dismissed Nance's complaint, finding that "the evidence . . . did not establish any discrimination." *Id.* at 16.  Nance says that the EEOC investigation was hindered by the fact that VA employees continually "lied" to investigators, misrepresenting Nance's record as an employee and blaming him for things that were not his fault.  Docket Item 20 at 5-7.

Nance appealed the administrative judge's decision and moved for reconsideration but was unsuccessful.[4]  *See* Docket Item 1 at 15-17.  He then filed this lawsuit.

## **LEGAL PRINCIPLES**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft*

---

[4] In the decision denying Nance's request for reconsideration, the EEOC noted that it did not consider Nance's allegations of "retaliation and a hostile work environment/harassment" because those allegations "were not included in his underlying complaint."  Docket Item 1 at 16 n.2.

5

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).  Although "a court is obliged to construe [pro se] pleadings liberally, particularly when they allege civil rights violations," *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004), even a pro se complaint "must plead 'enough facts to state a claim to relief that is plausible on its face,'" *Shibeshi v. City of New York*, 475 F. App'x 807, 808 (2d Cir. 2012) (summary order) (quoting *Twombly*, 550 U.S. at 570).

## DISCUSSION

Nance's amended complaint—liberally construed, *see McEachin*, 357 F.3d at 200—raises claims under Title VII and the WPA.[5]  *See* Docket Item 20.  McDonough

---

[5] Nance also refers to the Federal Tort Claims Act ("FTCA").  Docket Item 20 at 7.  While it is not entirely clear to this Court that he intends to raise claims under that statute, his amended complaint could be liberally construed as asserting an FTCA claim against the United States based on the VA employees' "false" statements in the course of the EEOC investigation.  *See id.* at 5-7.

McDonough did not address that claim in his motion to dismiss.  But this Court nonetheless must dismiss it for lack of subject matter jurisdiction.  *See Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont*, 565 F.3d 56, 62 (2d Cir. 2009) ("If subject matter jurisdiction is lacking and no party has called the matter to the court's attention, the court has the duty to dismiss the action sua sponte.").

The FTCA provides a vehicle for individuals to bring "civil actions . . . against the United States[] for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the [federal g]overnment while acting within the scope of his office or employment."  28

6

says that the amended complaint fails to state a claim on which relief can be granted. Docket Item 21-1.  This Court agrees.

I.   **TITLE VII CLAIMS**

Title VII prohibits employers and labor unions from discriminating against employees based on race, color, religion, sex, or national origin.  42 U.S.C. § 2000e-2.  It also prohibits retaliation when an employee opposes such discrimination by engaging in certain "protected activity."  *Id.* § 2000e–3(a).

A.   **Racial Discrimination**

In its previous order, this Court liberally construed Nance's complaint as asserting claims for racial discrimination under Title VII because Nance attached his administrative complaint alleging such discrimination.  *See Nance*, 2024 WL 22708, at *5; *see also Triestman v. Fed. Bur. of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)

---

U.S.C. § 1346(b)(1).  The FTCA "bars claimants from bringing suit in federal court until they have exhausted their administrative remedies."  *McNeil v. United States*, 508 U.S. 106, 113 (1993).  More specifically, an FTCA "action [can]not be instituted. . . unless the claimant . . . ha[s] first presented the claim to the appropriate [f]ederal agency and his claim ha[s] been finally denied by the agency in writing and sent by certified or registered mail."  28 U.S.C. § 2675(a).  The FTCA's exhaustion "requirement is jurisdictional and cannot be waived."  *Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 82 (2d Cir. 2005).

Because Nance does not allege that he has exhausted his FTCA claim—much less that it has been finally denied—this Court cannot exercise jurisdiction over it.  *See* Docket Item 20 at 7.  And while this Court might under different circumstances allow Nance leave to amend to show exhaustion of his claim, amendment would be futile here:  The FTCA specifically does not allow plaintiffs to bring claims based on "libel, slander, misrepresentation, deceit, or interference with contract rights" unless the defendant is a law enforcement officer.  *See* 28 U.S.C. § 2680(h).  So amendment would be futile, and this Court therefore dismisses any FTCA claim without prejudice for lack of subject matter jurisdiction.

(submissions of a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest). And because the defendants did not make any substantive argument for dismissing Nance's Title VII discrimination claims, the Court found that those claims could proceed against McDonough.[6]

But Nance does not even refer to racial discrimination in his amended complaint. *See generally* Docket Item 20. On the contrary, he says that he was harassed, subjected to a hostile work environment, and ultimately fired because he raised concerns about his lack of rotation and certain cleaning procedures. *See id.* And—unlike the first federal complaint—the amended complaint does not attach Nance's administrative complaint or even refer to that complaint's raising the issue of discrimination. *Compare* Docket Item 1, *with* Docket Item 20.

In his motion to dismiss, McDonough says that Nance "does not expressly assert a Title VII rac[ial] discrimination claim in his [a]mended [c]omplaint" but nonetheless moves to dismiss such a claim to the extent this Court construes the amended complaint as raising one. *See* Docket Item 21-1 at 9. McDonough notes that Nance has "failed to allege any facts that could create an inference that [Nance] was terminated because of his race," such as "racial slurs or any unfair treatment based on race." *Id.* "Rather," McDonough says, "the entirety of [the a]mended [c]omplaint is

---

[6] The Court dismissed all of Nance's Title VII claims against Riggi because when a federal employee sues under Title VII, the only proper defendant is the "head of the department, agency, or unit, as appropriate," 42 U.S.C. § 2000e-16(c); *see Pratt v. Brennan*, 2020 WL 364195, at *7 (S.D.N.Y. Jan. 22, 2020), and Title VII claims against any other employees of the entity in question must be dismissed, *see Ross v. Dep't of the Army*, 2023 WL 5494644, at *3 (E.D.N.Y. Aug. 24, 2023); *see also Nance*, 2024 WL 22708, at *3.

8

focused on [Nance's] contention that he was retaliated against for making complaints [related to the] rotation of job assignments." *Id.*

This Court agrees. Nance does not allege any facts suggesting that he was discriminated against based on race or any other protected characteristic. *See* Docket Item 20. On the contrary, as McDonough observes, Docket Item 21-1 at 9, Nance's amended complaint suggests that the alleged retaliation was because he complained about his work assignments and other work procedures. His Title VII discrimination claims therefore are dismissed.[7] *See Pang v. Ye*, 2024 WL 1298553, at *3 (2d Cir. Mar. 27, 2024) (summary order) (explaining that a Title VII hostile work environment claim "requires that a plaintiff demonstrate that the hostile work environment was created due in part to discrimination based on a protected characteristic" and dismissing claims where plaintiff did not "show[] any 'linkage or correlation' between any such differential treatment and a protected characteristic" (quoting *Alfano v. Costello*, 294 F.3d 365, 377 (2d Cir. 2002)), *cert. denied*, 145 S. Ct. 374 (Oct. 15, 2024); *Henry v. N.Y.C. Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 407 (S.D.N.Y. 2014) (granting motion to dismiss Title

---

[7] This Court declines to give Nance leave to amend his Title VII discrimination claims. As noted, Nance does not refer to discrimination on the basis of race whatsoever in his amended complaint. *See* Docket Item 20. Instead, he omits the very allegations that this Court construed as stating such a claim. *See id.*; *Nance*, 2024 WL 22708, at *5. This Court previously advised him that "an amended complaint is intended to completely replace the prior complaint in the action and thus 'renders [any prior complaint] of no legal effect.'" *Nance*, 2024 WL 22708, at *7 (alteration in original) (quoting *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977)); it therefore instructed him that "any amended complaint must include all allegations against each of the defendants so that the amended complaint stands alone as the only complaint that the defendants must answer in this action." *Id.* (emphasis omitted). Further, Nance does not oppose—or even mention—McDonough's argument that any racial discrimination claims in his amended complaint must be dismissed. *See* Docket Items 30 and 32.

9

VII claims where plaintiff "fail[ed] to allege facts plausib[ly] indicating that any conduct rising to the level of an adverse employment action was *because of* race or gender").

### B.     Retaliation

As he did in his first complaint, *see* Docket Item 1, Nance asserts Title VII retaliation claims in his amended complaint, Docket Item 20.  But those claims cannot proceed for at least two reasons.

#### 1.     Failure to Exhaust

As this Court explained in its previous order, *see Nance*, 2024 WL 22708, at *4, "Title VII requires a plaintiff to exhaust administrative remedies before filing suit in federal court," *Fowlkes v. Ironworkers Loc. 40*, 790 F.3d 378, 384 (2d Cir. 2015).  Under a narrow exception to the exhaustion requirement, "claims not raised in an [administrative] complaint may still be part of the complaint later filed in federal court 'if they are reasonably related to the claim filed with the agency.'"  *Littlejohn v. City of New York*, 795 F.3d 297, 322 (2d Cir. 2015) (quoting *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 69 (2d Cir.2006)).  A claim is reasonably related "if the conduct complained of would fall within the scope of the [administrative] investigation which can reasonably be expected to grow out of the charge that was made." *Id.* (quoting *Deravin v. Kerik,* 335 F.3d 195, 200-01 (2d Cir. 2003)).

This Court previously found that Nance's retaliation claims were not reasonably related to the allegations in his administrative complaint and that Nance therefore had not exhausted his administrative remedies for those claims.  *Nance*, 2024 WL 22708, at *4.  It thus held that Nance's retaliation claims were subject to dismissal but in light of

his pro se status, gave him leave to amend his complaint to show that he had exhausted his administrative remedies. *Id.*

McDonough argues that Nance's amended complaint fails to show that he exhausted his administrative remedies. Docket Item 21-1 at 5-6 (stating that Nance "has not alleged any facts in his [a]mended [c]omplaint regarding the issue of exhaustion of administrative remedies"). And McDonough is correct. Although Nance states in his sur-reply that much of the EEOC's decision "focused on retaliation[ s]uch as[] retaliatory harassment, retaliation, and retaliatory participation," Docket Item 32 at 2, that is a conclusory assertion that appears nowhere in his amended complaint, *see* Docket Item 20. And it contradicts the documents related to his administrative proceedings that Nance attached to his original complaint in this lawsuit. *See* Docket Item 1 at 9-14, 16 n.2; *see also Nance*, 2024 WL 22708, at *4.

For those reasons, Nance has not shown that he exhausted his retaliation claims, and he therefore cannot assert them here.

### 2. Failure to State a Claim

McDonough also argues that even if Nance had exhausted his retaliation claims, they must be dismissed because Nance has not alleged facts showing that he was retaliated against for engaging in protected activity. Docket Item 21-1 at 6. Again, this Court agrees.

To establish a prima facie case of retaliation under Title VII, "a plaintiff must demonstrate that '(1) [he] engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action.'" *Kelly v.*

11

*Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) (quoting *Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir. 2012)).  Crucially, "[a] plaintiff engages in protected activity [only] when [he] (1) opposes employment practices prohibited under Title VII; (2) makes a charge of discrimination; or (3) participates in an investigation, proceeding[,] or hearing arising under Title VII."  *Davis v. N.Y. State Dep't of Corr. Attica Corr. Facility*, 110 F. Supp. 3d 458, 462 (W.D.N.Y. 2015) (quoting *Bundschuh v. Inn on the Lake Hudson Hotels, LLC*, 914 F. Supp. 2d 395, 405 (W.D.N.Y. 2012)).

This Court previously held that Nance had failed to allege facts showing that he had engaged in "protected activity" of the sort that could give rise to a Title VII retaliation claim.  *Nance*, 2024 WL 22708, at *4-5.  It explained that although Nance alleged that he was retaliated against for complaining about Harris's failure to rotate his assignments and about the laryngoscope cleaning procedures, those complaints were not "protected activity" because they did not relate to conduct prohibited by Title VII.  *Id.*

The same is true of the allegations in the amended complaint.  Although Nance again emphasizes that he was fired and otherwise retaliated against based on his complaints about the lack of rotation and cleaning procedures, he does not allege any facts showing that the conduct about which he complained violated Title VII—for instance, because it was related to his race in some way.  Thus, he alleges no facts to show that he "oppose[d] employment practices" that were "prohibited under Title VII." *See Davis*, 100 F. Supp. 3d at 458 (quoting *Bundschuh*, 914 F. Supp. 2d at 405).

Nance repeatedly insists that his complaints about rotation issues and cleaning procedures constituted "protected" activity under Title VII.[8]  Docket Item 20 at 2 (stating that he was in "protected opposition to . . . Harris's rotation methods"); *id.* at 3 (alleging that Harris retaliated against him based on Nance's "protected opposition" to Harris's rotation methods); *id.* at 4 (alleging that Nance exercised "protected opposition" in raising concerns about laryngoscope cleaning procedures).  But asserting a legal conclusion does not make it true, and this Court is under no obligation to accept it as such.  *Iqbal*, 556 U.S. at 678 ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.")  And such conclusory assertions are not enough to show that Nance engaged in protected activity—and thus, not enough to state a Title VII retaliation claim.  *See Bloomberg v. N.Y.C. Dep't of Educ.*, 119 F.4th 209, 215-16 (2d Cir. 2024) (holding that "an employer who retaliates against an employee for opposing conduct or practices unrelated to employment discrimination does not engage in 'an unlawful employment practice' under [Title VII]" (quoting *Cooper v. N.Y. State Dep't of Lab.*, 819 F.3d 678, 681 (2d Cir. 2016))).

Nance's Title VII claims therefore are dismissed without further leave to amend.

---

[8] Nance also says that he engaged in "protected [activity]" by filing a complaint with the EEOC.  *See* Docket Item 20 at 5.  But he explicitly notes that he filed that complaint *after* he was fired from the VA—and thus after all the retaliation he alleges occurred.  *Id.*  Therefore, because he suffered no "materially adverse action" as a result of his EEOC complaint—in fact, because all the adverse action already had occurred when he filed that complaint—his EEOC complaint necessarily cannot form the basis for a Title VII retaliation claim here.  *See Kelly*, 716 F.3d at 14*; Kalarickal v. McDonough*, 2021 WL 5112907, at *5 (S.D.N.Y. Nov. 3, 2021) ("To the extent that [plaintiff's] retaliation claim is based on [his second EEOC c]omplaint, it fails because [plaintiff] did not file th[at c]omplaint until after he had already been fired.").

13

### II.   WPA CLAIMS

Nance claims that he was fired because of complaints related to patient safety. *See* Docket Item 20.  And the facts alleged may well have stated viable whistleblower claims under the WPA had Nance exhausted his administrative remedies.  But those claims nevertheless must be dismissed as well.

In its previous order, this Court held that it lacked jurisdiction over Nance's WPA claims because he failed to exhaust his administrative remedies.  *See Nance*, 2024 WL 22708, at *6; *see also Chinniah v. Fed. Energy Regul. Comm'n*, 62 F.4th 700, 702 (2d Cir. 2023) (stating that the "exhaustion of administrative remedies is a jurisdictional prerequisite to" obtaining judicial review of WPA claims (quoting *Weaver v. U.S. Info. Agency*, 87 F.3d 1429, 1433 (D.C. Cir. 1996))).  Nance's amended complaint does not explicitly reassert his WPA claims, and it certainly does not allege any facts showing that he exhausted them.  *See* Docket Item 20; *see also* Docket Item 21-1 at 7.

Therefore, to the extent that Nance's amended complaint asserts claims under the WPA, those claims are dismissed without prejudice for lack of subject matter jurisdiction and without further leave to amend.

## CONCLUSION

For the reasons stated above, McDonough's motion to dismiss is GRANTED.  In addition, Nance's WPA claims against Riggi and his FTCA claim are dismissed without prejudice for lack of subject matter jurisdiction.  The Clerk of the Court shall close this case.

SO ORDERED.

Dated: March 11, 2025
       Buffalo, New York

                                      */s/ Lawrence J. Vilardo*
                                      LAWRENCE J. VILARDO
                                      UNITED STATES DISTRICT JUDGE